UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SHIRLEY MORTON,

                        **Plaintiff,**

  - v -                                                  1:08-CV-1304
                                                          (TJM/RFT)

**THE CITY OF ALBANY, KEVIN MCKENNA,**
Individually and in his capacity as a police officer,
**PETER NOONAN,** Individually and in his capacity
as a police officer, **LEONARD CROUCH,** Individually
and in his capacity as a police officer, and
**JAMES TUFFEY,** Individually and in his capacity as
Chief of the Albany Police Department,

                        **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

**I.    INTRODUCTION**

      Plaintiff commenced this action asserting claims pursuant to 42 U.S.C. § 1983 and state law. See Compl., dkt. # 1. Defendants move to dismiss portions of the complaint pursuant to Fed. R. Civ. P. 12(b)(6). Def. Motion, dkt. # 4. Plaintiff opposes the motion and cross-moves for leave to file an amended complaint. Pl. Op. & Cross-Motion, dkt. # 20. Defendants oppose the cross-motion on the ground that the proposed amendments would not cure the asserted defects in the original pleading and, thus, amendment would be futile. Def. Opp., dkt. # 23.

1

## II.  STANDARD OF REVIEW

Because the proposed amendment is intended to cure the asserted factual defects in the Complaint, see Greenberg Aff. ¶ 7,[1] and because "[t]he court should freely give leave [to amend]" except when, *inter alia,* amendment would be futile, Fed. R. Civ. P. 15(a)(2); Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000), the Court will review the claims in the proposed Amended Complaint pursuant to Rule 12(b)(6).

To withstand a Rule 12(b)(6) motion, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 557).  Plausibility means "more than a sheer possibility that a defendant has acted unlawfully," and a complaint that pleads facts "that are 'merely consistent with' a defendant's liability [] 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" Id. (quoting Twombly, 550 U.S. at  557).

While the Rule 12(b)(6) standard has long required that a court accept as true the allegations contained in a complaint, this rule does not apply to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Id. (citing Twombly, 550 U.S. at 555). The liberality accorded pleadings under Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than

---

[1] ("Plaintiff's proposed Amended Complaint alleges additional facts regarding the liability of the defendants . . . [but] contains no additional causes of action.")

conclusions. [O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Id., at 1950 (citing Twombly, 550 U.S. at 556).

## III.    BACKGROUND[2]

Plaintiff was a civilian employee of the Albany Police Department serving as a clerk-typist in the Traffic Safety Division. Plaintiff's supervisor was Defendant Kevin McKenna. "While under the supervision of Kevin McKenna, Plaintiff was subjected to inappropriate behavior by Kevin McKenna." Proposed Amend. Compl. ("Am. Compl.") ¶ 19. Plaintiff reported the "inappropriate behavior" to Defendant Leonard Crouch, McKenna's supervisor, and to other supervisors within the Albany Police Department, but no action was taken to "deal with Plaintiff's complaints." Id. ¶¶ 24-27.

On January 2, 2008, while at work, Defendant Peter Noonan provided a handgun to McKenna and told McKenna that the handgun was loaded. McKenna "took the handgun and pointed it at the Plaintiff from approximately six feet away." Id. ¶ 32. Noonan pushed McKenna's hand down, but McKenna again pointed the gun at Plaintiff. Noonan then walked away.

Plaintiff asserts that McKenna "had previously engaged in improper and inappropriate use of firearms, and defendant, the City of Albany, knew, or should have known of Kevin McKenna's propensity to misuse firearms." Id. ¶ 36. She contends that the Albany Police Department had been "lax in its oversight of firearms and their use by police officers," and that, "[u]pon information and belief, prior to January 2, 2008, officers of the Albany Police Department engaged in 'horseplay' with firearms while on duty,

---

[2]The facts are taken from the proposed Amended Complaint.

including aiming firearms at each other." Id. ¶¶ 37-38.  Based on the content of a July 2, 2008 newspaper article, Plaintiff asserts that Chief Tuffey was aware that officers of the Albany Police Department had been involved in the illegal purchase of firearms yet the City of Albany "failed to institute policies or procedures in order to discourage the unauthorized and improper purchase and use of firearms." Id. ¶ 39.  She further asserts that, "[u]pon information and belief, civilian employees of the Albany Police Department have been subjected to a pattern of harassment by the police officers of the Albany Police Department." Id. ¶ 40.

> Based upon these allegations, Plaintiff pleads that
>
> James Tuffey, as Chief of Police for the Albany Police Department, has created policies and customs under which unconstitutional practices have occurred, including but not limited to, the harassment of Plaintiff, the use of excessive force against Plaintiff, the illegal seizure of Plaintiff, and the deprivation of Plaintiff's right to equal protection under law.

Id. ¶ 41.  She further pleads that "James Tuffey was grossly negligent in supervising subordinates, including but not limited to, Kevin McKenna and Peter Noonan, and as a result of his grossly negligent supervision, Plaintiff's constitutional rights were violated." Id. ¶ 43.

Plaintiff contends that McKenna's conduct amounted to common law assault, id. ¶¶ 44-49 ("Count I"), wrongful imprisonment, id. ¶¶ 50-56 ("Count II"), intentional infliction of emotional distress, id. ¶¶ 57-63 ("Count III"), and a violation of her constitutional rights "to be free from improper seizure, to be free from unreasonable force, and to enjoy the equal protection of law." Id. ¶ 75, see id. ¶¶ 74-77 ("Count VI").  Plaintiff also sues Peter Noonan, Leonard Crouch, and James Tuffey in Count VI, although she does not allege any further facts elucidating their individual involvement in the asserted constitutional

violations. Plaintiff further contends that Noonan is liable for the asserted constitutional violations perpetrated by McKenna because Noonan failed to intervene to prevent McKenna's conduct. Id. ¶¶ 78-82 ("Count VII").

Plaintiff also sues the City of Albany under a common law theory of negligent hiring, retention, and/or supervision, id. ¶¶ 64-70 ("Count IV"), and a Monell[3] theory of failure to train or supervise. Id. ¶¶ 83-91. She sues all defendants under a common law theory of negligence asserting that "the defendants, their agents, servants and/or employees were negligent, reckless and careless in the ownership, operation, maintenance, control, possession of the aforesaid handgun." Id. ¶ 71, see id. ¶¶ 71-73 ("Count V"). Additionally, Plaintiff sues all defendants asserting that their conduct deprived her of "the rights, privileges and immunities secured by the Constitution of the State of New York, including, but not limited to Plaintiff's right to be free from improper seizure, to be free from unreasonable force, and to enjoy the equal protection of law." Id. ¶ 92, see id. ¶¶ 92-95 ("Count IX").

## IV.    DISCUSSION

### a.    Section 1983 Liability

"Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." Deniran v. Mattingly, 2009 WL 857621, at *5 (S.D.N.Y. Mar. 31, 2009). In order to allege a viable Section 1983 claim, Plaintiff must allege facts demonstrating that: (1) she suffered "the violation of a right secured by the Constitution and laws of the United States" and (2) "the alleged

---

[3] Monell v. Dep't of Social Servs. of City of New York, 436 U.S. 658, 690-95, 98 S. Ct. 2018, 56 L. Ed.2d 611 (1978).

5

deprivation was committed by a person acting under the color of state law." West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed.2d 40 (1988).

### 1. Fourth Amendment Unlawful Seizure

Plaintiff asserts that she was unlawfully seized by Officer McKenna in violation of her rights secured by the Fourth Amendment. Such claims are colloquially referred to as false arrest or false imprisonment claims and are substantially the same as claims for false arrest under New York law. Guadagni v. N.Y.C. Trans. Auth., 2009 WL 1910953, at * 4 (E.D.N.Y. June 30, 2009);[4] see also Ostroski v. Town of Southold, 443 F. Supp.2d 325, 334 (E.D.N.Y. 2006).[5] "To state a claim for false arrest or false imprisonment under New York law, a plaintiff must show that: (1) the defendant intentionally confined the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise justified." Guadagni, 2009 WL 1910953, at * 4 (citing Savino v. City of N.Y., 331 F.3d 63, 75 (2d Cir. 2003)).

While a § 1983 false arrest claim against a police officer must be based upon an unjustified seizure of the plaintiff by the officer, "[n]ot every encounter between a police officer and an individual is a seizure implicating the fourth amendment's protections." United States v. Lee, 916 F.2d 814, 819 (2d Cir. 1990)(citations omitted). "Rather, an individual can be said to have been seized by the police only if, in view of all of the

---

[4] ("Federal claims for false arrest and imprisonment brought via § 1983 rest on an individual's Fourth Amendment right to be 'free from unreasonable seizures, including arrest without probable cause,' and are 'substantially the same as a claim for false arrest under New York law.'" )(quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir.1996)).

[5] ("In New York, the claim colloquially known as 'false arrest' is a variant of the tort of false imprisonment, and that tort is used to analyze an alleged Fourth Amendment violation in the § 1983 context.")(citing Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir.1995), cert. denied, 517 U.S. 1189, 116 S. Ct. 1676, 134 L. Ed.2d 779 (1996)).

6

circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Id. (citations and interior quotation marks omitted); see Brown v. Sweeney, 526 F. Supp.2d 126, 132 (D. Mass. 2007).[6]

> Essentially, this inquiry is an objective assessment of the overall coercive effect of the police conduct. Factors which might suggest a seizure therefore include: the threatening presence of several officers; the display of a weapon; physical touching of the person by the officer; language or tone indicating that compliance with the officer was compulsory; prolonged retention of a person's personal effects, such as airplane tickets or identification; and a request by the officer to accompany him to the police station or a police room.

Lee, 916 F.2d at 819 (citing, *inter alia,* Michigan v. Chesternut, 486 U.S. 567, 573 108 S. Ct. 1975, 100 L. Ed.2d 565 (1988)). The test is imprecise "[b]ecause it is designed to assess the coercive effect of police conduct, taken as a whole, rather than to focus on particular details of that conduct in isolation." Chesternut, .486 U.S. at 573, 108 S. Ct. at 1979, 100 L. Ed.2d at 571.

In support of the motion to dismiss the Complaint, Defendants argued that Plaintiff failed to plead a cognizable Fourth Amendment seizure claim because:

> [n]owhere in the Complaint is it alleged that there was a significant interpretation of Ms. Morton's liberty of movement or that it was a significant limitation on her freedom, nor is it alleged that she believed that there was a limitation of her movement or that she was prevented from moving. It is merely alleged that McKenna pointed a gun in her direction twice for several seconds.

Def. Mem. L. p. 17.[7]

---

[6]("The test for whether a person has been 'seized' for purposes of the Fourth Amendment is whether 'the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'")(quoting Florida v. Bostick, 501 U.S. 429, 437, 111 S .Ct. 2382, 115 L. Ed.2d 389 (1991)).

[7]Under New York law, a seizure is said to have occurred if "the police action results in a 'significant
(continued...)

Defendants are correct that the Complaint contains no direct allegation that Plaintiff's liberty of movement was curtailed, and the proposed Amended Complaint provides no additional factual allegations to cure this asserted-defect. See e.g. Greenberg Aff. Ex. 2.[8]  However, both the Complaint and the proposed Amended Complaint contain the following allegations in Count II ("Wrongful Imprisonment as to Defendant Kevin McKenna") of each pleading:

| | |
|---|---|
| 41/51.[9] | On January 2, 2008, defendant Kevin McKenna intended to confine the Plaintiff. |
| 42/52. | Plaintiff was conscious of the confinement. |
| 43/53. | The confinement was not privileged. |

Count VI in both the Complaint and proposed Amended Complaint (the count asserting Plaintiff's Section 1983 claims) incorporates by reference all of the preceding allegations. Thus, the question is whether the allegations are sufficient to present a plausible Fourth Amendment false arrest claim, or whether the allegations amount to a common law tort claim that, while wrongful, does not constitute a violation of the Fourth Amendment. The Court finds that it is the latter.

When a police officer points a handgun at a private citizen, images are invoked of the classic show of police force used to curtail a criminal suspect's freedom. However, on

---

[7](...continued)
interruption [of the] individual's liberty of movement.'"  Brown v. State of New York, 814 N.Y.S.2d 492, 498 (N.Y. Ct. Cl. 2006)(quoting People v. Bora, 83 N.Y.2d 531, 534 (1994)).

[8]In support of the cross-motion to amend the Complaint, Plaintiff's counsel submits an affidavit that includes, as Exhibit 2, a "redlined" version of the proposed Amended Complaint showing where amendments and emendations were made to the Complaint.

[9]The first number is the paragraph number from the Complaint, the second is from the proposed Amended Complaint.

January 2, 2008, McKenna pointed the handgun at Plaintiff while the two were working together in the police station. McKenna was not instituting a police arrest and there are no allegations of the classic hallmarks that accompany a formal arrest.[10] More importantly, there is no allegation that McKenna said anything that would lead an objectively reasonable person to conclude that McKenna raised the weapon intending it to be a show of force to restrain Plaintiff's freedom of movement.[11]

Even though Plaintiff was placed in a threatening position by McKenna's actions, the threat was to bodily injury, not to being arrested or confined. The allegations, taken as whole, tend to indicate that McKenna's action on January 2, 2008 was a form of the reckless "horseplay with firearms while on duty" that officers within the Albany Police Department had previously engaged in, or, if intentionally directed at Plaintiff, was a continuation of the harassment that McKenna had perpetrated upon Plaintiff. See Prop. Am. Compl. ¶¶ 27-28;[12]  ¶ 38;[13] ¶ 40.[14]   While the Court certainly does not condone

---

[10] For example, there is no allegation of a "threatening presence of several officers" intended to curtail Plaintiff's freedom (indeed, Noonan is alleged to have walked away after pushing McKenna's hand down); there is no allegation of a "physical touching of [Plaintiff] by [McKenna]"; there is no allegation of any statement by McKenna indicating that Plaintiff could not move; there is no allegation that McKenna retained Plaintiff's personal effects; and there is no allegation that McKenna requested, ordered, or instructed Plaintiff to accompany him to another location within the police station. See Lee, 916 F.2d at 819.

[11] For example, there is no allegation that McKenna said "Freeze," or "Don't move," or that he uttered any other command that is generally used to curtail the freedom of the other.

[12] (McKenna's harassment of Plaintiff continued despite her complaints to supervisors within the Albany Police Department).

[13] ("Upon information and belief, prior to January 2, 2008, officers of the Albany Police Department engaged in 'horseplay' with firearms while on duty, including aiming firearms at each other.").

[14] ("Upon information and belief, civilian employees of the Albany Police Department have been subjected to a pattern of harassment by the police officers of the Albany Police Department.").

McKenna's behavior or wish to diminish the seriousness of his actions,[15] Plaintiff has asserted, at most, the threadbare recitals of the elements of a unlawful seizure claim. The allegations merely raise the possibility of a viable false arrest claim. However, as the Supreme Court has stated, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S. Ct. at 1949. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 1949-50 (internal quotations and citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." Id. at 1950 (internal citations and quotation omitted).

Without factual allegations supporting the inference that McKenna's conduct on January 2, 2008 was undertaken to confine Plaintiff as opposed to scare or menace her, Plaintiff has not asserted a plausible unlawful Fourth Amendment seizure claim. See Fuller v. Vines, 36 F.3d 65, 68 (9th Cir. 1994),[16] overruled on other grounds by Robinson v.

---

[15] Although not relevant to the instant motion, Defendants assert that McKenna was criminally charged and tried for menacing in the second degree, and was subjected to inter-department disciplinary proceedings, for his conduct on January 2, 2008. The Court notes that under N.Y. Penal Law § 120.14(1), a person is guilty of menacing in the second degree when "[h]e or she intentionally places or attempts to place another person in reasonable fear of physical injury, serious physical injury or death by displaying a deadly weapon, dangerous instrument or what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm." By contrast, a person is guilty of unlawful imprisonment in the second degree under N.Y. Penal Law § 135.05 "when he restrains another person." N.Y. Penal Law § 135.00(1) defines "restrain" to mean "to restrict a person's movements intentionally and unlawfully in such manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent and with knowledge that the restriction is unlawful. "

[16] (Denying plaintiff's motion to amend the complaint to add a Fourth Amendment seizure claim where police officers pointed guns at plaintiff's head and threatened to kill the plaintiff if he attacked the officers because "[t]here is no contention that [plaintiff] was arrested or that his liberty was restrained, other than that

(continued...)

10

Solano County, 278 F.3d 1007 (9th Cir. 2002); Brown, 526 F. Supp.2d at 133;[17] see also Palmieri v. Town of Babylon, 2008 WL 3155153, at * 13 (E.D.N.Y. 2008).[18]  The Complaint and the proposed Amended Complaint are legally insufficient in this regard.

Further, and although not raised by Defendants, the allegations in the Complaint and in the proposed Amended Complaint do not support the proposition that McKenna's action on January 2, 2008 was taken under color of state law.  "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." Carlos v. Santos, 123 F.3d 61, 65 (2d Cir.1997)(quotation marks and citations omitted).  "Courts have had frequent occasion to interpret the term 'color of law' for the purposes of section 1983 actions, and it is by now axiomatic that 'under 'color' of law means under 'pretense' of law' and that 'acts of officers in the ambit of their personal pursuits are plainly excluded.'" Pitchell v. Callan, 13 F.3d 545, 547-548 (2d Cir. 1995) (quoting Screws v. United States, 325 U.S. 91, 111, 65 S. Ct. 1031, 1040, 89 L. Ed. 1495 (1945)).  "In assessing whether a police officer acted under

---

[16](...continued)
he was not free to attack the officers. The officers contend that this action with the gun was necessary in order to keep [the plaintiff] from attacking them. Although [plaintiffs] argue that this was unnecessary, there is no contention that the officers indicated [plaintiff] was not free to leave. . . . Even considering the amended complaint and the factual submissions relating to [the incident], the allegations are insufficient to constitute a Fourth Amendment violation for seizure of the person. The allegations may constitute a state tort violation, but as alleged, they do not constitute a constitutional violation.")

[17](Dismissing Fourth Amendment seizure claim because the officer's "show of authority never resulted in the intentional acquisition of physical control over the subject and caused a termination of his freedom of movement. Importantly, [the plaintiff] never yielded to the assertion of authority over him.")(internal citations and quotation marks omitted).

[18]("[T]he mere threat to arrest someone, even if the threat is made by a police officer with authority to arrest . . ., does not constitute an arrest absent other circumstances.").

11

color of law, the court looks beyond whether the officer was on or off duty." Perez v. City of New York, 1999 WL 1495444, at * 2 (E.D.N.Y. Nov. 19, 1999)(citing Pitchell, 13 F.3d at 548). Liability against a police officer under Section 1983 may be found where a police officer, whether on or off duty, "invokes the real or apparent power of the police department" or performs "duties prescribed generally for police officers." Pitchell, 13 F.3d at 548 (citations omitted). "In short, courts look to the nature of the officer's act, not simply his duty status." Id.

As indicated, there is no allegation that McKenna was performing his official or customary police function or duties when he pointed the gun at Plaintiff. See West v. Atkins, 487 U.S. 42, 50, 108 S.Ct. 2250, 2256 (1988).[19] Instead, the allegations indicate that the conduct was in pursuit of a private dispute between Plaintiff and McKenna, and there is no allegation that McKenna invoked the real or apparent power of the police department in the course of his conduct. McKenna was clearly acting outside the scope of the authority afforded to him by virtue of his employment, and he did not use the cloak of his authority under state law to perpetrate his conduct toward Plaintiff. Therefore, even assuming that Plaintiff has asserted a plausible false arrest claim, she has failed to assert facts that would establishing that the conduct was taken under color of state law. See Bonsignore v. City of New York, 683 F.2d 635, 638-39 (2d Cir. 1982);[20] McNamara v. City

---

[19](A public employee acts under color of state law "while acting in his official capacity or while exercising his responsibilities pursuant to state law.")

[20](off duty police officer who shot his wife "was not acting under color of state law since his actions were not 'committed in the performance of any actual or pretended duty,' but were performed 'in the ambit of [his] personal pursuits")(citations omitted).

12

of New York, 2009 WL 735135, at * 3  (S.D.N.Y. March 20, 2009);[21] Grigorov v. Cerasani, 1991 WL 28195, at * 3 (E.D.N.Y. Feb. 15, 1991).[22]

Accordingly, Plaintiff's Fourth Amendment illegal seizure claim in the Complaint is dismissed. Because the proposed amendment to the Complaint would not cure the defects in this claim, the motion for leave to amend this claim is denied as futile.

### 2. Fourth Amendment Excessive Force

The Fourth Amendment also protects individuals from the use of excessive force in the course of an arrest by a police officer. See Graham v. Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 1971, 104 L. Ed.2d 443 (1989).[23]  However, because Plaintiff has not asserted sufficient facts in either the Complaint or the proposed Amended Complaint demonstrating that she was arrested, the protections of the Fourth Amendment relative to arrests are not implicated.  Further, as indicated above, Plaintiff has not asserted facts that would establish that McKenna's action, even if taken in the course of a *de facto* arrest, was taken under color of state law.  Accordingly, Plaintiff's Fourth Amendment excessive force claim is dismissed, and leave to file the proposed amendment is denied as futile.

---

[21] (Dismissing § 1983 claims against off duty police officer premised upon conduct that occurred during a fight with the plaintiff because "no rational fact finder could determine that [the officer] was acting under color of state law prior to the time he displayed his badge and gun and identified himself as a police officer.")

[22] ("Regardless of whether [defendant] is employed by . . . the police, it is undisputed that the incident at [plaintiff's] residence was nothing more than a landlord-tenant dispute over the amount of security deposit to be returned to [defendant's] son. [Defendant] went to [plaintiff's] residence to obtain his son's security deposit. [Plaintiff] claims [defendant] then pointed a gun at [plaintiff] and threatened to kill him. It is clear that [defendant] was not acting under color of state law with regard to this essentially private dispute with his son's landlord over the return of his son's security deposit.").

[23] ("[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment 'reasonableness' standard.").

### 3. Fourteenth Amendment Equal Protection

The Fourteenth Amendment's Equal Protection Clause "is basically a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985).  In order to prevail on an equal protection claim, Plaintiff must establish that (1) she was treated differently than others similarly situated, and (2) this differential treatment was motivated by an intent to discriminate on the basis of race, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person. Diesel v. Town of Lewisboro, 232 F.3d 92, 103 (2d Cir. 2000); Lovell v. Comsewogue Sch. Dist., 214 F. Supp.2d 319, 321-22 (E.D.N.Y. 2003).

Plaintiff has not alleged that she was treated differently than others similarly situated within the Albany Police Department, and, instead, the allegations in the proposed Amended Complaint tend to indicate that her treatment by Defendant McKenna was in keeping with a practice within the Department which condoned harassment of civilian employees by uniformed police officers. See Am. Compl. ¶ 40.   She has not asserted that any similarly situated employee was treated differently than she or that she was harassed with an intent to discriminate on the basis of race, to punish or inhibit her exercise of constitutional rights, or by a malicious or bad faith intent to injure her.  She asserts, at most, a "class of one" theory of equal protection[24] that the Supreme Court has rejected in the public employment context. Engquist v. Oregon Department of Agriculture, --- U.S. ----,

---

[24] "The 'class-of-one' theory holds that 'the Equal Protection Clause forbids public employers from irrationally treating one employee differently from others similarly situated, regardless of whether the different treatment is based on the employee's membership in a particular class.'" Conyers v. Rossides, 558 F.3d 137, 152 (2d Cir. 2009)(quoting Engquist v. Oregon Department of Agriculture, --- U.S. ----, 128 S. Ct. 2146, 2150, 170 L. Ed.2d 975 (2008)).

128 S. Ct. 2146, 2151, 170 L. Ed.2d 975 (2008).[25] Therefore, any equal protection claim asserted in the Complaint or proposed Amended Complaint must be dismissed. See Conyers v. Rossides, 558 F.3d 137, 152 (2d Cir. 2009).[26]

### 4. Failure to Intervene, Monell, and Supervisory Liability

Because Plaintiff has not asserted an actionable violation of her federal constitutional rights, her Section 1983 claims premised upon the theories of the failure to intervene, see O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988);[27] Monell liability, see Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008);[28] and supervisory liability, see Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995),[29] must also be dismissed.

### b. State Law Claims

Having dismissed all federal causes of action, the Court finds that concerns for

---

[25] (The "traditional view of the core concern of the Equal Protection Clause as a shield against arbitrary classifications, combined with unique considerations applicable when the government acts as employer as opposed to sovereign, lead us to conclude that the class-of-one theory of equal protection does not apply in the public employment context.").

[26] ("Because Conyers, like Engquist, does not assert an employment-related equal protection claim arising out of his membership in any particular group, but rather a claim based upon a general allegation that an agency 'treated a[ ] [prospective] employee differently from others for a bad reason, or for no reason at all,' his equal protection claim cannot survive defendant's motion to dismiss.")(quoting Engquist, 28 S. Ct. at 2151).

[27] (law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence. )

[28] ("In order to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury.")(citing Monell v. Dep't of Social Servs., 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978)).

[29] (Personal involvement of a supervisory official, which is a prerequisite to § 1983 liability, may be established by evidence of (1) direct participation in an alleged constitutional violation; (2) failure to remedy a constitutional violation after learning of it; (3) creation or maintenance of a policy under which unconstitutional violations occurred; (4) gross negligence in managing subordinates who committed unconstitutional acts; or (5) deliberate indifference by failing to act on information indicating that constitutional violations were occurring.)

judicial economy, convenience, fairness, and comity weigh against retaining supplemental jurisdiction over the remaining state law claims. Therefore, the Court declines to exercise supplemental jurisdiction over the remaining state law causes of action and those claims are dismissed without prejudice to refiling in state court. See 28 U.S.C. § 1367(c)(3);[30] Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988);[31] Straker v. N.Y.C. Trans. Auth., 2009 WL 1796542, at * 1 (2d Cir. June 25, 2009)(summary order);[32] N.Y. Mercantile Exch., Inc. v. Intercontinental Exch., Inc., 497 F.3d 109, 119 (2d Cir. 2007).[33]

## V.    CONCLUSION

For the reasons discussed above,

Defendants' motion [dkt. # 4]  is **GRANTED** and Plaintiff's claims pursuant to 42 U.S.C. § 1983 are **DISMISSED**.

Plaintiff's cross-motion for leave to file an Amended Complaint [dkt. # 20] is **DENIED** as futile.

The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, and all such claims are **DISMISSED WITHOUT PREJUDICE** to refiling in state court.

---

[30] (District court may decline to exercise supplemental jurisdiction over a claim if, *inter alia*, "the district court has dismissed all claims over which it has original jurisdiction").

[31] ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims").

[32] ("[T]he District Court acted well within its discretion in declining to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(c), over plaintiff's state law breach of the duty of fair representation claim after it had dismissed each of plaintiff's claims under federal law.").

[33] ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.")(internal quotation marks omitted)).

16

**IT IS SO ORDERED**.

DATED: August 19, 2009

_/s/ Thomas J. McAvoy_
Thomas J. McAvoy
Senior, U.S. District Judge